**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **OIL STATES INTERNATIONAL, INC. ET AL.,** ) ) ) | **CASE NO.1:04CV2486, 1:05CV1489, 1:05CV1560** |
| Appellants, ) ) | **JUDGE CHRISTOPHER A. BOYKO** |
| Vs. ) ) | |
| **LTV CORPORATION, ET AL.,** ) ) | **OPINION AND ORDER** |
| Appellees. ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on three appeals of decisions by the Bankruptcy Court in the underlying bankruptcy case. On September 8, 2006, the Court heard consolidated oral arguments on the above appeals. For the following reasons, the Court affirms the decisions of the Bankruptcy Court in all three appeals.

**FACTS**

On July 18, 1995, LTV and CE Holdings, Inc., predecessor to Oil States International, Inc.("Oil States") entered into an agreement by which Oil States acquired two wholly-owned subsidiaries of LTV for the purchase price of $74.3 Million ( $60 Million in cash and $14.3

1

Million in Preferred Stock of one of the acquired companies, Continental Emsco (predecessor to Oil States Industries, Inc.). The Purchase Agreement included indemnification provisions, by which LTV agreed to indemnify Oil States against lawsuits arising out of asbestos exposure or environmental hazards. On December 29, 2000, LTV filed for Chapter 11 bankruptcy protection. In February of 2001, Continental Emsco exercised its right to redeem and paid LTV $14.6 Million (shares plus accrued dividends). LTV surrendered its shares of Preferred Stock. In the fall of 2001, Oil States notified LTV that a law suit had been filed against Oil States relating to asbestos exposure for which LTV was obligated to provide indemnification.[1]

In December of 2001, LTV rejected the 1995 Purchase Agreement pursuant to Section 365(a) of the Bankruptcy Code, which permits a debtor to assume or reject executory contracts. The Bankruptcy Judge allowed the rejection. The rejection of the executory contract was affirmed on appeal by this Court on March 30, 2005.

Section 365(g)(1) gives a non-debtor party to a rejected contract a remedy – i.e., a pre-petition claim for breach of contract. Instead, Oil States filed an Adversary Proceeding seeking to take back the Preferred Stock Redemption Payment based upon a state law unjust enrichment claim and a constructive trust remedy.

### I. 04-2486 - APPEAL OF SUMMARY JUDGMENT

On November 2, 2004, the Bankruptcy Court entered summary judgment against Oil States. In part, the Court refused to re-write the parties' contract. Further, the Court acknowledged that in the sphere of bankruptcy, insolvent debtors are consistently unable to

---

[1] Eleven lawsuits have been filed against Oil States relating to asbestos exposure. All have been dismissed without Oil States paying.

satisfy their creditors in full. Therefore, the bankruptcy estate is routinely "unjustly enriched."

Earlier, on October 16, 2003, Oil States amended its Adversary Proceeding Complaint and traced the Preferred Stock payment to the Debtor-in-Possession Lenders. Oil States claims it is equitably subrogated to the liens of the lenders on assets of all debtors.

The Bankruptcy Court's opinion focused on the existence of two separate contracts: (1) the Stock Purchase Agreement between LTV and Oil States, with an integration clause, describing the contract as the whole contract with exclusive remedies under its terms; and (2) the Preferred Stock Certificate of Designations and Amended Certificate of Designations, a Delaware contract between the stockholder LTV and Continental Emsco, the issuing company, which included no reference to the Purchase Agreement. Under the Bankruptcy Court's analysis, LTV is not unjustly retaining part of the payment under the Purchase Agreement; rather, it received equivalent consideration for its surrender of Preferred Stock shares. The Bankruptcy Court's opinion held: 1) where there is an express contract, state law unjust enrichment claims are generally barred; 2) unjust enrichment is barred where agreed-upon compensation is received. LTV gave full performance under the Preferred Stock Certificate of Designations and Amended Certificate of Designations, surrendering the 143,000 shares in exchange for the Preferred Stock redemption payment; 3) 8 Delaware Code Section 151 requires restrictions on stock transferability be spelled out and expressly stated on the certificates. These certificates made no mention of the Purchase Agreement or the indemnification obligation; 4) constructive trusts are not equitable when formed post-petition and are not an appropriate remedy when the alleged trust arose after the petition date; and 5) no equitable subrogation exists since the Preferred Stock redemption payment was not held in trust.

3

**Appellant's Arguments on Summary Judgment**:

Appellant contends, having repudiated its post-petition obligations under the Agreement, LTV has no right to retain post-petition benefits and its continuing possession is unjust. Appellant relies on *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 531 (1984), which held when a debtor assumes an executory contract it assumes both the benefits and the burdens.

Appellant also contends Oil States' obligation to pay $14.6 Million to LTV and LTV's obligation to indemnify Oil States are parts of a single contract because they are too interdependent; the deferred stock obligation equaled twenty percent of the overall purchase price; and the Agreement was not considered apart from its attached schedules. Consequently, when LTV accepted the $14.6 Million post-petition pre-rejection performance by Oil States it had to assume the obligations contained in the contract - i.e. the indemnification of Oil States in the asbestos suits, or because LTV may not retain the benefits of the contract - i.e. the $14.6 Million, while repudiating its post-petition burdens.  By retaining the value of the redeemed stock, the bankruptcy estate was benefitted by the post-petition, pre-rejection performance by Oil States.

According to Appellant, the Bankruptcy Court did not apply the correct test in finding two separate contracts existed. The obligation to pay the $14.6 Million was specifically defined in Section 2.3(B) of the Agreement.  Appellant submits the correct test is found in *Budge v. Post,* 544 F. Supp. 370, 382 (N.D. Tex. 1982) (Texas law controls the interpretation of the contract) which held Courts must examine whether, "two or more promises are so interdependent that the parties would not have entered into one without the other." If the Bankruptcy Court had applied the correct test, the evidence strongly supports the determination that the agreements constitute

4

one contract.

Furthermore, Appellant argues a rejected contract cannot be enforced by anyone. Unjust enrichment cannot be foreclosed by an "unenforceable" contract.

Appellant contends the Bankruptcy Court also erred in finding Appellant received the full value of its agreement when it redeemed its Preferred Stock for $14.6 Million. Appellant argues it did not receive the bargained for indemnification contained in the Purchase Agreement, which cannot be separated from the Preferred Stock payment.

Appellant's last two arguments are: (1) the Delaware law refers to restrictions as to class or series of stock and not to restrictions on the conduct of a shareholder; and, (2) equitable subrogation is permitted, and the Bankruptcy Court erred in denying Appellant's claim.

**Appellee's Response**

LTV contends Appellants unjust enrichment claim is barred, as there exists express written contracts that determine the obligations of each party. Further, LTV asserts:

(1) Appellants unjust enrichment claim would impose a forfeiture on LTV;

(2) Appellants unjust enrichment claim is barred by Delaware law;

(3) Applicable law prohibits the imposition of a post-petition constructive trust; and,

(4) Equitable subrogation is inconsistent with the Bankruptcy Code.

**LAW AND ANALYSIS**

**Standard of Review**

In reviewing a bankruptcy proceeding, "the district court reviews the bankruptcy court's conclusions of law *de novo* and upholds its findings of fact unless they are clearly erroneous." *In re: Made in Detroit, Inc.*, 414 F. 3d 576, 2005 Fed. App. 0286P, *8 (6th Cir., July 1, 2005); *255*

*Park Plaza Assocs. Ltd. P'ship v. Conn. Gen Life Ins. Co.* (*In re 255 Park Plaza Assocs. Ltd. P'Ship*), 100 F. 3d 1214, 1216 (6th Cir. 1996). "Where a bankruptcy court's determination involves a mixed question of fact and law, the district court "must break it down into its constituent parts and apply the appropriate standard of review for each part." *Wesbanco Bank Barnesville v. Rafoth* (*In re Baker & Getty Fin. Servs., Inc.*), 106 F. 3d 1255, 1259 (6th Cir. 1997)(*quoting Investors Credit Corp. v. Batie* (*In re Batie*), 995 F. 2d 85, 88 (6th Cir. 1993)).

A grant of summary judgment is reviewed *de novo*. *In re Structurlite Plastics Corp.,* 224 B.R. 27, 29 (6th Cir. BAP 1998). "We review a district court's order granting summary judgment *de novo*, and its findings of fact for clear error." *In re Markowitz,* 190 F.3d 455, 463 (6th Cir. 1999).

## **One or Two Agreements**

The Bankruptcy Court determined, upon summary judgment, that the Purchase Agreement and the Preferred Stock payment were two separate agreements; and LTV could reject the executory Purchase Agreement without implicating the Preferred Stock payment agreement. The crux of this appeal is whether the two agreements are actually one contract, making it inequitable for LTV to assume the positive aspects of the agreement - i.e. the retention of the Preferred Stock payment, without assuming the negative aspects - i.e. the indemnification clause. This Court finds the Bankruptcy Court did not err in finding two agreements exist.

First, Texas law holds "documents cannot be considered together unless they reference each other or they refer to the *same* subject matter." *Woodhaven Homes, Inc. v. Alford,* 143 S.W.3d 202 (Tex.App.-Dallas, 2004), citing *Douglass v. Texas-Canadian Oil Corp.,* 174 S.W.2d 730, 731 (1943). The Bankruptcy Court correctly noted neither the Certificate of Designations

nor the Amended Certificate of Designations dated July 25, 2000, reference the Purchase Agreement, or condition the Preferred Stock redemption on the indemnification requirements of the Purchase Agreement. The Purchase Agreement between LTV Corp. and CE Holdings, Inc., allowed Oil States to defer paying the remaining balance of $14.3 Million in exchange for issuing 143,000 shares of Preferred Stock to LTV. The Purchase Agreement required Continental Emsco (predecessor to Oil States Industries) to file a Certificate of Designations for the newly issued Preferred Stock with the Secretary of State of Delaware, pursuant to Delaware law and in the form attached to Schedule 2.3(B) of the Purchase Agreement. The Purchase Agreement was governed by Texas law while the Certificate of Designations and Amended Certificate were governed by Delaware law.[2] The redemption terms and dividend amounts were not established in the Purchase Agreement. Article IX, section 9.9 of the Purchase Agreement, contains an integration clause that states in pertinent part, "[t]his Agreement constitutes the entire agreement and supercedes all prior agreements and understandings, both written and oral, among the parties..." Furthermore, section 9.9 states, "the remedies set forth in Article VIII are the exclusive remedies with respect to any damages relating to this Agreement and the transactions contemplated hereby." Nowhere does the integration clause expressly include the attached Schedules which reference the sample form of the Certificate of Designations.

The Certificate of Designations and Amended Certificate of Designations are controlled by Delaware law. The Bankruptcy Court held 8 Del. Code §151 requires any restrictions or conditions on stock must be clearly and expressly set forth in the Certificate of Designations.

---

[2] The Certificate of Designations was Amended to allow Oil States to extend the redemption date, as Oil States was unable to redeem the Preferred Stock pre-petition when requested by LTV. In exchange, Oil States increased the dividend payment from $7.00 per share to $12.00 per share.

Appellant contends the restrictions and conditions required on the Certificate of Designations by Delaware law only apply to the stock itself and not to restrictions or conditions imposed on a particular stockholder. Because it is not challenging the legal characteristics of the Preferred Stock, Appellant further argues 8 Del Code §151 is not implicated.

This Court finds the transferability of the Preferred Stock did not require the subsequent transferee assume the indemnification obligations contained in the Purchase Agreement. If that were the intent of the parties, they were required under Delaware law to be clearly referenced on the Certificate of Designations and the Stock Certificate itself. It is undisputed no such restrictions or obligations are found on the Certificate of Designations, the Amended Certificate of Designations or the Preferred Stock Certificate. Therefore, if no indemnification requirement followed the Preferred Stock, such obligation was not a part of the Preferred Stock transfer.

Appellant presents two new arguments regarding LTV's actual knowledge and status as a party to the Purchase Agreement. Because these arguments were not raised in the bankruptcy proceedings below, Appellant has waived them. See. *PACCAR Inc. v. TeleScan Technologies, L.L.C.,* 319 F.3d 243 (6th Cir. 2003), ("[a]rguments that were not raised below may not be asserted on appeal"). Since the Preferred Stock transfer is expressly governed by Delaware law and there is no reference to the Purchase Agreement in the Certificate of Designations, Amended Designations or Stock Certificate; since the integration clause does not reference the attached Schedules; and, since the Purchase Agreement and Stock Transfer involve different parties,[3] the Court affirms the Bankruptcy Court's determination that two agreements exist.

---

[3] The Purchase Agreement was between CE Holdings, Inc. and LTV, while the Preferred Stock Certificate of Designations was between Continental Emsco and LTV. A parent and a subsidiary are separate and distinct legal entities under Delaware law, (See *IGEN Intern., Inc. v. Roche Diagnostics GmbH,* 335 F.3d 303 (4th Cir.,2003),

**Unjust Enrichment**

Having affirmed the Bankruptcy Court's decision that there exists two separate agreements, the existence of two contracts dictates a determination that Appellee was not unjustly enriched by redemption of the Preferred Stock. Because the Preferred Stock redemption occurred prior to LTV's rejection of the executory Purchase Agreement, the bankruptcy estate was not unjustly enriched by retaining the value of the Preferred Stock. First, the Preferred Stock's par value was $100 a share. LTV obtained 143,000 shares of Preferred Stock from Continental Emsco. On its schedule of assets, LTV listed the 143,000 shares at a value of $14,300,000. When Continental Emsco moved to redeem the shares, it received the Preferred Stock shares back.. LTV received its bargained for value of the shares and dividends and Continental Emsco received the shares of Preferred Stock. Therefore, each party to the Preferred Stock agreement received the bargained for value of the agreement. The indemnification clause was not made a part of the Preferred Stock transaction.

The *Bildisco* case, *supra,* is not applicable here where there exist two contracts and LTV and Continental Emsco each received the value of their bargain, while LTV rejected the executory Purchase Agreement. Because both sides received the full value of their bargain in the Preferred Stock transaction, LTV was not required to fully perform under the independent and discrete Purchase Agreement. In other words, LTV is not accepting the benefits of a contract while rejecting the burdens. It fully performed under the Preferred Stock transaction and Continental Emsco received full value.

The Bankruptcy Court further held that Bankruptcy Code 11 U.S.C. 365(a) permits the trustee of the debtor's estate to reject or assume any executory contract. Citing to *City of*

9

*Covington Landing Ltd. Partnership,* 71 F.3d 1221, 1226-7 (6th Cir. 1995), all parties with the agreement of the Bankruptcy Court, acknowledge that an executory contract may not be assumed in part, and rejected, in part.  However, the Bankruptcy Court held that rejection of an executory contract "does not require debtor to return prior performance."  Appellant contends that *In re Metro Transportation Co.,* 87 B.R. 338, 344 (Bankr. E.D. Pa. 1988), on which the Bankruptcy Court relied, does hold that rejection does not result in complete recision of an executory contract; however, Appellant points out that *In re Metro* further states, "the Debtor must compensate the contracting parties in the Agreements for the benefits which it has already obtained therefrom."  Thus, *In re Metro,* according to Appellant, actually bolsters Appellants' unjust enrichment argument.  However, the very next line in *In re Metro* states, " The Debtor's rejection is a breach of the Agreement, 11 U.S.C. 365(g), rendering it liable to the Association and Committee members for damages arising therefrom. 11 U.S.C. 365(g) holds a rejection of an executory contract by debtor constitutes a pre-petition breach of the contract.  Therefore, Appellant's remedies are limited to breach of contract claims against the LTV estate.

Finally, the Court finds where an express contract controls, unjust enrichment does not apply.  *APJ Assocs. v. N. Am Phillips Corp.*  317 F.3d 610 (6th Cir. 2003).  The Bankruptcy Court examined, and this Court confirms, the laws of Delaware, Texas and Ohio all recognize equitable relief is inappropriate when an express contract governs.  Appellant contends a cause of action for unjust enrichment exists when a party receives post-petition, pre-rejection benefits. "As a general rule, this Court does not entertain issues raised for the first time in an appellant's reply brief." *United States v. Demjanjuk,* 367 F.3d 623, 637 (6th Cir. 2004) citing *United States v. Crozier,* 259 F.3d 503, 517 (6th Cir.2001) (citing *Bendix Autolite Corp. v. Midwesco Enters.,*

*Inc.,* 820 F.2d 186, 189 (6th Cir.1987)).  The Sixth Circuit in *Demjanjuk* went on to say, "'[c]ourt decisions have made it clear that the appellant cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in appellee's brief.' " *Id.* (quoting *United States v. Jerkins,* 871 F.2d 598, 602 n. 3 (6th Cir.1989)).  Appellant admits it first raised this argument in its Sur-Reply Brief in Opposition to Defendant's Motion for Summary Judgment and in its Response to Debtors-Defendant's Citation of Supplemental Authority. (Consolidated Reply Brief pg. 8 Footnote 14).  Therefore, this Court finds Appellant is precluded from raising this argument for the first time in its Sur-Reply.  Furthermore, the Bankruptcy Court's Opinion does not address this issue and the Court may reasonably conclude it did not consider the new argument.  However, even if this Court were to consider this issue, the Court has already determined two contracts existed and the alleged post-petition, pre-rejection benefit to the estate was pursuant to a non-rejected fully performed agreement.  Therefore, the Court finds Appellant is not entitled to damages arising from Appellant's unjust enrichment claim.

## Constructive Trust

Appellant seeks the imposition of a constructive trust or equitable lien on the debtor's property due to debtor's unjust enrichment.  Having determined Appellant may not maintain a cause of action for unjust enrichment, Appellants argument for imposition of a constructive trust as a remedy must fail.  Appellee contends, and the Bankruptcy Court agreed, that constructive trusts may not be imposed when the alleged constructive trust arises post-petition.  The Bankruptcy Court relied on *XL/Datacomp, Inc. v. Wilson (In re Omegas Group Inc.)*, 16 F.3d 1443 (6th Cir. 1994) which held constructive trusts arising post-petition are incompatible with the bankruptcy code.  This Court agrees and finds Appellant's seek a post-petition constructive trust

11

which *Omegas* prohibits.

### Subrogation

Having already determined express agreements govern the transactions, and Appellant has no cause of action for unjust enrichment and no entitlement to the imposition of a constructive trust, Appellant may not, therefore, maintain an action for equitable subrogation.

### 05-1489 - APPEAL FROM DENIAL OF ADMINISTRATIVE CLAIM

Oil States Industries appeals the Bankruptcy Order of April 18, 2005, sustaining the objection filed by LTV to its administrative claim.[4]  The issue before this Court is whether Oil States Industries is entitled to allowance of an administrative claim under Section 503(b) of the Bankruptcy Code to recover the value of the $14.6 Million post-petition payment to LTV.

An administrative claim is allowed where a party provides post-petition consideration to a debtor-in-possession which directly benefits the debtor's estate.

Oil States Industries' arguments mirror those presented in the appeal of the Bankruptcy Court's grant of LTV's Motion for Summary Judgment.  Those arguments are as follows:

1. Continued retention of $14.6 Million from the redemption of the Preferred Stock constitutes unjust enrichment.

2. Non-debtor party is entitled to an administrative expense in an amount equal to the value of its post-petition, pre-rejection performance.

3. Oil States Industries provided post-petition consideration that resulted in a benefit to the estate in the form of $14.6 Million.

LTV contends Oil States Industries' administrative claim was properly disallowed, as it

---

[4] The Court notes that Oil States admits all of its appeal claims arise from a common set of operative facts and collectively seeks one ultimate recovery, even though there are three appeals.

received in exchange for post-petition payment preferred stock equal in value. Furthermore, under applicable law, Oil States' remedy is limited to breach of contract. Oil States conferred no benefit on the estate because LTV gave up an asset of equal value, i.e. the Preferred Stock. *In re White Motor Corp.,* 831 F. 2d 106, 110 (6th Cir. 1987). 11 U.S.C. §503(b), regarding administrative claims, is strictly construed because administrative expense claims are granted priority over others, and Oil States has the burden of establishing the right to have its claim allowed. Also, this was a pre-petition transaction. Oil States was compensated by the surrender of stock. There was no net value gain by LTV's estate because there was an even exchange. Finally, LTV contends , rejection of an executory contract does not effect a recision or "undo" post-petition, pre-rejection performance.

## **LAW AND ANALYSIS**

The Bankruptcy Court's decision receives no deference as to legal conclusions, which are reviewed *de novo*.

11 U.S.C. §503 holds in pertinent part:

**a)** An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause.

**(b)** After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including--

**(1)(A)** the actual, necessary costs and expenses of preserving the estate--

The Court, having already addressed the issue of two separate contracts, holds the Bankruptcy Court did not err in denying Oil States' administrative claim, as both contracts were pre-petition agreements. The Preferred Stock Redemption that occurred post-

13

petition was fully performed by both parties.  Therefore, the estate received the bargained for value of its pre-petition agreement. LTV's estate received the cash value of the Preferred Stock in exchange for the Preferred Stock shares redeemed by Oil States.  Oil States received the full compensation described in the Certificate of Designations and Amended Certificate of Designations, and therefore, any benefit received by the estate was fully compensated by the estate's surrender of the Preferred Stock.  Therefore, the Bankruptcy Court's decision denying Oil States' administrative claim is affirmed.

## 05-1560 -APPEAL FROM DENIAL OF ADMINISTRATIVE CLAIM

Oil States Industries is a wholly-owned subsidiary of Oil States International.  Oil States International is **not** the entity that made the Preferred Stock Redemption Payment to LTV.

This appeal challenges the May 9, 2005 Order disallowing an administrative claim for failure of Oil States International to meet its burden under 11 U.S.C. §503(b) to demonstrate it is entitled to an administrative claim, as the payment made to the LTV estate was not made by Oil States International but by Oil States Industries, a wholly-owned subsidiary of Oil States International.  In failing to satisfy this burden, the Bankruptcy Court held Oil States International failed to demonstrate it made the $14.6 Million payment to the Debtor.  Furthermore, the Bankruptcy Court held Oil States failed to demonstrate why Oil States Industries' pre-petition obligation to redeem the Preferred Stock constitutes a post-petition administrative claim.

This Court finds wholly-owned subsidiaries are separate and distinct legal entities under Ohio and Delaware law. *See Mutual Holding Co. v. Limbach,* 71 Ohio St.3d 59, 60 (1994) and *IGEN Intern., Inc. v. Roche Diagnostics GmbH,* 335 F.3d 303 (4th Cir.,2003).

LTV insists Oil States International is not entitled to an administrative claim for the

Preferred Stock payment made by its wholly-owned subsidiary as they are distinct legal entities. This Court finds that Oil States International has failed to demonstrate a right to an administrative claim on a payment made by its wholly-owned subsidiary.  Therefore, the Court affirms the Bankruptcy Court's denial of Oil States' administrative claim.

       IT IS SO ORDERED.


| October 23, 2006 | s/Christopher A. Boyko |
|---|---|
| Date | CHRISTOPHER A. BOYKO |
|  | United States District Judge |